http://www.va.gov/vetapp16/Files3/1621766.txt

Citation Nr: 1621766 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 13-28 383 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota

THE ISSUE

Entitlement to service connection for a heart disability, to include as secondary to a service-connected psychiatric disability. 

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Jaime M. Porter, Associate Counsel

INTRODUCTION

The Veteran served on active duty from September 1958 to September 1960. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an October 2012 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Paul, Minnesota. 

The Veteran appeared and testified at a Travel Board hearing before the undersigned Veterans Law Judge (VLJ) in April 2015. A copy of the transcript of this hearing has been associated with the claims file. 

This case was previously remanded by the Board, in June 2015, for further development. For the reasons discussed below, the Board finds that the RO is in substantial compliance with the directives set forth in the June 2015 remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Board observes that the October 2012 rating decision also denied the Veteran's claim of entitlement to service connection for bilateral lower extremity peripheral neuropathy. The Veteran did not file a notice of disagreement as to this issue, therefore, it is not before the Board. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDING OF FACT

The most probative evidence of record does not reflect that the Veteran's heart disability is related to active service, or that the heart disability was caused or aggravated by the Veteran's service-connected psychiatric disability.

CONCLUSION OF LAW

The criteria for service connection for a heart disability are not met. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

VA's Duty to Notify and Assist

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

In this case, a VA letter issued in July 2012 satisfied the duty to notify. The letter notified the Veteran of the regulations pertinent to the establishment of direct service connection and secondary service connection, and to the establishment of an effective date and disability rating in the event of a grant of service connection. See Dingess/Hartman, 19 Vet. App. at 486.

With regard to the duty to assist, the record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran. Specifically, the RO obtained the Veteran's service treatment records and VA medical center (VAMC) records and associated them with the claims file. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In addition, the RO obtained private treatment records for which the Veteran provided a VA Form 21-4142, Authorization to Disclose Information. 

The Veteran was provided a VA examination in August 2015 with regard to his heart disability, and a report of this examination has been obtained. When VA provides a medical examination or obtains a medical opinion, it must ensure that the examination or opinion is adequate. See 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Here, the examiner reviewed the Veteran's claims file; examined the Veteran and conducted appropriate diagnostic testing; considered the Veteran's reported symptomatology; and explained the rationale for the opinion rendered. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Thus, the examination is adequate. 

There is no indication in the record that any additional evidence relevant to the issue adjudicated in this decision is available and not part of the claims file. See Pelegrini, 18 Vet. App. at 112. Moreover, because there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield, 20 Vet. App. at 537; see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009). 

Other Due Process Considerations

The Veteran was afforded a hearing before the undersigned VLJ in April 2015. The Court has held that 38 C.F.R. § 3.103(c)(2) requires that the VLJ who conducts a hearing fulfill two duties to comply with the above regulation. Bryant v. Shinseki, 23 Vet. App. 488 (2010). These duties consist of (1) the duty to fully explain the issues, and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the VLJ asked the Veteran specific questions concerning the symptoms of and treatment for his heart disability. The hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate the claim. Furthermore, the VLJ solicited information as to the existence of any outstanding evidence. No pertinent evidence that might have been overlooked and that might substantiate the claim was identified by the Veteran or his representative. The Veteran was assisted at the hearing by his representative, and neither the representative nor the Veteran has suggested any deficiency in the conduct of the hearing. Therefore, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

As noted in the Introduction, this case was previously remanded by the Board in June 2015. A Board remand confers upon an appellant the right to compliance with that order. Stegall v. West, 11 Vet. App. 268, 271 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that there must be substantial compliance with the terms of a Court or Board remand). Here, the June 2015 Board remand directed the RO to obtain treatment records from Northern Memorial Hospital, schedule the Veteran for a VA examination to determine the etiology of any diagnosed heart disability, and readjudicate the claim.

Pursuant to the June 2015 Board remand, the RO provided the Veteran with a VA examination and readjudicated the claim in a September 2015 supplemental statement of the case. As noted above, the VA examination, considered in combination with the other evidence of record, is adequate for decision making purposes. In addition, in July 2015, the RO requested that the Veteran complete and return a VA Form 21-4142, Authorization to Disclose Information, so that private medical records from Northern Memorial Hospital could be obtained on his behalf. The Veteran has not responded to this request, nor has he provided these records himself. Assisting the Veteran "is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Board cannot force the Veteran to provide the relevant information. Under these circumstances, the Board concludes that there has been substantial compliance with its June 2015 remand as the RO met its duty to attempt to obtain the records. See Stegall, 11 Vet. App. at 268; Dyment v. West, 13 Vet. App. 141, 146-47 (1999); D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that there must be substantial compliance with the terms of a Court or Board remand).

Legal Criteria 

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by a veteran's active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. That an injury or disease occurred in service is not enough; there must be a chronic disability resulting from that injury or disease. Disorders diagnosed after discharge may also be deemed service connected if all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 503, 505 (1992). 

Establishing service connection on a direct-incurrence basis requires: (1) competent diagnosis of a current disability; (2) medical, or in certain cases, lay evidence of an in-service incurrence or aggravation of a disease or injury; and (3) competent evidence of a causal relationship between the current disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999).

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. It may also include statements conveying sound medical principles found in medical treatises and/or statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). 

Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Service connection for certain diseases may be established on a presumptive basis by showing manifestation to a degree of 10 percent or more within one year from the date of separation from service. 38 C.F.R. §§ 3.307(a)(3), 3.309(a). Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and VA regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. 38 C.F.R. § 3.303(d). 

If a chronic disease is shown in service, subsequent manifestations of the same chronic disease at any later date, however remote, may be service connected, unless the disease is clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). If a condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection if the disability is one that is listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Where the evidence does not warrant presumptive service connection, a veteran is not precluded from establishing service connection with proof of direct causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

Service connection may also be granted on a secondary basis for a disability if it is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) chronically aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence as to any issue material to the claim, the Veteran is afforded the benefit of the doubt. 

Analysis

In this case, the Veteran filed a claim of entitlement to service connection for a heart disability, including as secondary to his service-connected psychiatric disability (anxiety reaction with depression), in July 2012. The medical evidence of record shows a current diagnosis of coronary artery disease (CAD), with an implanted cardiac pacemaker and coronary artery bypass graft (CABG). 

Initially, the Board notes that the Veteran is not entitled to service connection on a presumptive basis, as he has not been shown to have a diagnosis of any disability contemplated for presumption under 38 C.F.R. § 3.309(a). Moreover, the presumption of service connection for diseases associated with herbicide exposure, such as CAD, is not for application as there is no assertion of exposure to herbicides during service, or evidence thereof. See 38 C.F.R. § 3.309(e). 

In this case, the Veteran has not established entitlement to service connection on a direct-incurrence basis. The Veteran's service treatment records do not show complaints of, treatment for, or diagnosis of CAD or any other heart disease during active duty. The Veteran's service treatment records document his complaints of chest pain and difficulty breathing during service. However, in July 1959, these symptoms were diagnosed as psychogenic reactions affecting the respiratory system. Moreover, clinical evaluations of his heart were normal. The Veteran's August 1960 separation examination noted that he had a psychiatric condition described as a psychogenic reaction affecting other systems, including cardiovascular and respiratory, manifesting as tightness and pain in the chest, somatic delusion of "rubbing inside the chest," and preoccupation with symptomatology. There were no findings of heart disease at separation. 

The Veteran was first diagnosed with a heart disability, CAD, in 2002. The Veteran had an angioplasty in 2002, a pacemaker implanted in September 2011, and coronary artery bypass grafting in 2013. During this period, the Veteran's symptoms included bradycardia, chest pain, and lightheadedness. 

In May 2013, the Veteran received medical treatment at Mercy Hospital, where he presented to the emergency department complaining of dizziness and fatigue. The treating physician performed an examination and considered the results of diagnostic tests including an electrocardiogram, head CT scan, chest x-ray, and echocardiogram. Based on this evidence, the physician ruled out neurologic and cardiovascular causes, stating "I wonder if his symptoms are not anxiety related," and concluding that "a lot of his issues very well could be anxiety related." The Veteran was diagnosed with dizziness and paresthesias. 

At the VA hearing held in April 2015, the Veteran testified to the symptoms he experienced during service. For example, his heart would beat really fast when he was anxious. He also had pressure and pain in his chest. He reported passing out while at a concert in Germany; upon examination, he was told that his heart was fine but that he could have hypertension. The Veteran also testified that he has experienced these symptoms continuously since service. During his treatment for a heart attack in 2000, at North Memorial Hospital, the Veteran was told that stress was negatively affecting his heart and that his stress levels needed to be reduced to prevent future heart problems. 

The medical evidence of record demonstrates that the Veteran has a current diagnosis of CAD, with an implanted cardiac pacemaker and CABG. In addition, the Veteran is competent to report the symptoms he experienced during and after service, such as chest pain and difficulty breathing. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, the Board finds that the weight of the competent and probative evidence of record does not support a nexus between these symptoms and the Veteran's diagnosed CAD. In addition, the competent and probative evidence does not demonstrate that the Veteran's CAD was caused by or chronically aggravated by his service-connected psychiatric disability. 

The competent opinions of record as to whether the Veteran's CAD is related to his active service are negative to his claim. In September 2012, the Veteran was afforded a VA examination. The examiner noted that the Veteran was diagnosed with CAD status post myocardial infarction in 2002, as well as symptomatic bradycardia, probably secondary to his CAD. Citing the lack of cardiological evidence that the Veteran's psychiatric disability caused his heart condition, the examiner concluded that it was less likely than not that the Veteran's cardiac condition was related to his service-connected psychiatric disability. Rather, the examiner stated that the Veteran's heart condition was caused by ischemic heart disease/coronary artery disease. The examiner also noted that when the Veteran was asked whether his service-connected psychiatric disorder caused his heart condition, he responded that it had not. 

An addendum VA opinion was obtained in October 2012 to address whether the Veteran's heart condition was at least as likely as not aggravated beyond its natural progression by his service-connected psychiatric disability. The examiner reviewed the claims file and opined that the Veteran's heart condition clearly and unmistakably preexisted service and clearly and unmistakably was not aggravated beyond its natural progression by any in-service injury, event, or illness. The examiner also stated that the Veteran's heart disease was less likely as not aggravated by his service-connected psychiatric disability, as there was no evidence that his anxiety impacted his heart condition. 

The Veteran was provided another VA examination in August 2015. The examiner noted the Veteran's diagnoses as CAD, an implanted cardiac pacemaker, and CABG, and stated that the etiology of the CAD was atherosclerosis. The Veteran reported that he experienced sharp chest pain three times per week, but had been told by his cardiologist that his heart was fine. Upon examination of the Veteran and a review of the Veteran's medical records, the VA examiner concluded that there was objective evidence of a normally functioning heart based on findings of a normal ejection fraction of 65 percent and no regional wall motion abnormalities.

The August 2015 VA examiner went on to opine that it was less likely than not that the Veteran's heart condition was incurred in, caused by, or aggravated by the claimed in-service injury, event, or illness. In support of this conclusion, the examiner cited the lack of objective medical evidence, most notably the absence of any diagnosis of heart disease during service. The only heart issue documented in service was somatic complaints of chest pain; there was no evidence that heart disease contributed to the Veteran's chest pain. Thus, the VA examiner explained that based on the objective medical evidence of record, the reported chest pain was due to the Veteran's underlying stress disorder. In addition, the Veteran's heart condition was not diagnosed until 44 years after service. Finally, the examiner explained that although mental stress can temporarily exacerbate physical conditions, it does not cause or permanently worsen physical conditions, and according to multiple studies, a causal link between stress and cardiovascular disease is uncertain. The examiner also noted that there are numerous major risk factors for the development of coronary heart disease and that the Veteran has all of these risk factors. 

In considering the medical evidence of record, the Board finds that the September 2012 and October 2012 VA opinions have no probative value. See Nieves-Rodriguez, 22 Vet. App. at 303-04; Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Neither examiner provided sufficient supporting rationale in concluding that the Veteran's heart condition was not caused or aggravated by his service-connected psychiatric disability. In addition, the examiners failed to address the Veteran's lay statements that his heart symptoms worsened during periods of stress or anxiety. Finally, the examiners did not consider the Veteran's service treatment records, which documented his chest pain during service, nor did they opine as to whether the Veteran's current heart condition is directly related to the symptoms he experienced in service. As to the October 2012 VA examiner's opinion that the Veteran's heart condition preexisted service, there is no evidence of record to support this finding, nor did the examiner explain the basis for this finding. Accordingly, the opinion is not for consideration in determining the Veteran's entitlement to service connection for a heart disability. 

The Board also finds that the May 2013 records from Mercy Hospital are not probative. The treating physician did not opine as to an etiological relationship between the Veteran's CAD and his service-connected psychiatric disability, but instead merely speculated that "a lot of [the Veteran's] issues very well could be anxiety related." 

However, the opinion of the August 2015 VA examiner is highly probative. The opinion is based on a thorough review of the Veteran's claims file, and the examiner was fully informed of the pertinent factual premises of the case, to include the Veteran's lay statements that his chest pain began during service and has continued to the present. In addition, the examiner provided a fully articulated opinion supported by reasoned analysis and citation to relevant medical literature. The examiner's opinion is consistent with the other evidence of record, to include the Veteran's service treatment records. For these reasons, the Board accords significant probative value to the medical opinion of the August 2015 VA examiner. See Nieves-Rodriguez, 22 Vet. App. at 303-04 (the probative value of a medical opinion is derived from a factually accurate, fully articulated, and soundly reasoned opinion); Prejean, 13 Vet. App. at 448-49 (the thoroughness and detail of a medical opinion is a factor in assessing the probative value of the opinion).

The Board acknowledges the Veteran's assertions that he developed CAD during service and that it was caused by or aggravated by his psychiatric disability. Lay evidence may be competent to establish medical etiology or nexus. Davidson, 581 F.3d at 1316. However, the causation of a cardiovascular condition falls outside the realm of knowledge of a lay person. Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); Jandreau, 492 F.3d at 1377 n.4. The Veteran is competent to describe his symptoms and their onset, but a cardiovascular disorder, such as CAD, is not a simple medical condition, such as a broken leg, that can be perceived through the senses. Layno, 6 Vet. App. at 469. Where, as here, the diagnosis in question is not capable of lay observation, the Veteran is not competent to state that the current disability was caused by service. The etiology of CAD involves a complex medical question, one typically determined by persons with medical training, and does not lend itself to lay opinion evidence. Id. The Veteran has not demonstrated that he has the medical knowledge and expertise necessary to opine on such issues. Therefore, his statements attributing in-service symptoms to CAD and connecting his service-connected psychiatric disability to CAD are not competent evidence. Thus, they are of no probative value. 

As to the Veteran's testimony that a doctor at North Memorial Hospital said stress was negatively affecting his heart, this is likewise not competent evidence. See Jandreau, 492 F.3d at 1372. The Veteran is not relaying a contemporaneous medical diagnosis nor is he describing symptoms that later support a medical diagnosis. Moreover, the testimony does not address whether there is an etiological relationship between the Veteran's psychiatric disability and his CAD, nor does it consider chronic aggravation. 

Accordingly, the Board accepts the August 2015 VA examiner's opinion as the most probative evidence of record. The examiner's opinion indicates that it is less likely than not that the Veteran's current heart disability, diagnosed as CAD, had its onset during the Veteran's active service or is otherwise etiologically related to his service. In addition, the August 2015 VA examiner opined that is less likely than not that the Veteran's CAD was caused or aggravated by his service-connected psychiatric disability. There are no competent medical opinions weighing against the VA examiner's negative nexus opinion. Therefore, the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

ORDER

Entitlement to service connection for a heart disability, to include as secondary to a service-connected psychiatric disability, is denied. 

____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs